IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Cedric Martino, ) | Civil Action No. 6:11-3472-JFA-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Wayne McCabe, Warden, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner who is represented by counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC"). On February 5, 2003, the petitioner pleaded guilty to three counts of armed robbery. The petitioner was represented by Colleton County Public Defender Wendell Adams. The State was represented by Assistant Solicitor Jennifer Jordan of the 14th Judicial Circuit. Judge Perry Buckner sentenced the petitioner to 15 years confinement on one count of armed robbery and ten years each on the other two counts, all to be served concurrently (App. 21-22). The petitioner did not file a direct appeal.

The petitioner was also charged with armed robberies in Berkeley County, Dorchester County, and Orangeburg County (App. 80-81). Following the petitioner's plea

in Colleton County, he pleaded guilty to common law robbery in Berkeley County and, separately, in Dorchester County.[1] The petitioner received consecutive 15-year sentences at each of these proceedings, which resulted in a cumulative 45-year sentence (App. 84-85).

On February 25, 2004, the petitioner filed an application for post-conviction relief ("PCR") (2004-CP-15-222), alleging ineffective assistance of counsel with regard to the Colleton County guilty pleas, and that the guilty pleas were not knowing, voluntary, and intelligent (App. 24-34). Specifically, the petitioner claimed that counsel was ineffective for four reasons. First, he asserted counsel failed to adequately and independently investigate the allegations against him. Second, the petitioner claimed counsel failed to discuss with and advise him as to the law as it applied to the particular facts and circumstances of his case. Third, the petitioner contended counsel failed to discuss with and advise him as to particular defenses available and the relevant law as it applied to those defenses. Fourth, the petitioner argued counsel failed to discuss with and advise him regarding the possibility that his statement to law enforcement authorities could be ruled involuntary and therefore inadmissible at trial (App. 31). The petitioner further contended that his guilty plea was involuntary. Specifically, the petitioner asserted:

> [C]ounsel was constitutionally ineffective and that [the petitioner] was prejudiced to the extent that his pleas of guilty were not knowing, voluntary, and intelligent through counsel's failure to inform [the petitioner] of the trial options that existed and through counsel's failure to inform [the petitioner] of the relevant law as it applied to the trial options and defenses to enable [the petitioner] to make a knowing and intelligent choice among the alternative courses of action open to [the petitioner] prior to his pleas. Counsel failed to subject the State's case to meaningful adversarial testing. The adversarial testing process

---

[1]The Orangeburg County charges were dismissed as a part of the Dorchester County plea (App. 82).

will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies. Counsel has a duty to make reasonable investigations into the case. [The petitioner] was entitled to a reasonable and adequate defense and includes the right to be informed by counsel that potential defenses exist as well as what the potential defenses are and, how the facts of the case and the law as applied to those facts would bear upon the potential defenses. If, and only if, [the petitioner] had been fully informed of how the law applied to the particular facts of his case and potential defenses, then, and only then, could [the petitioner] have made a knowing, voluntary, and intelligent choice on how best to proceed. These failures by counsel puts counsel's conduct below an objective standard of reasonableness, outside the range of competence demanded for attorneys in criminal cases and is therefore ineffective.

[The petitioner] further submits that his "admission" of guilt does not render non-prejudicial his allegation that counsel was ineffective. *Craddock v. State*, S.C. 491 S.E.2d 251 (1997).

(App. 32-33).

The State served its Return on June 15, 2005 (App. 35-40). On April 15, 2008, an evidentiary hearing in this PCR action was held (App. 62-108). The petitioner was present and was represented by John R. Hetrick. The State was represented by Assistant Attorney General Matthew J. Friedman. The petitioner's plea counsel, Wendell Adams, was deceased at the time of the PCR hearing. The PCR court filed its order of dismissal on June 20, 2008 (App. 109-13).

In the order, the PCR court noted the petitioner had been charged with a series of armed robberies in numerous counties in the state, including Colleton, Berkeley, Dorchester, and Orangeburg Counties. (App. 110). The petitioner maintained that he first pleaded guilty in Colleton County with the understanding that the remaining charges would be dismissed. The PCR court found that no such representation was made to the petitioner

3

(App. 110-11).  The plea judge explained that this was a violent and most serious offense, requiring that he serve 85% of his sentence, and that in the event that he pleaded to a subsequent most serious offense that he could be subject to life in prison without the possibility of parole (App. 111).  Additionally, the parameters of the plea agreement were set out in the plea transcript revealing that the negotiation was for 15-year sentences on each of the Colleton County offenses with credit for time served.

The PCR court found that the petitioner's plea was entered knowingly, voluntarily, and intelligently pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969).  The record reflected a sufficient factual basis on which to accept the plea (App. 111).  The petitioner told the plea court that his attorney advised him of the charges, the maximum penalties, his constitutional rights, and the consequences of the plea.  The petitioner told the plea court that no one promised him anything or threatened him to get him to plead guilty.  The petitioner told the plea court that he was, in fact, guilty of the three armed robberies.  The petitioner also told the plea court that he was fully satisfied with plea counsel's representation.

The PCR court found that plea counsel conferred with the petitioner on numerous occasions (App. 111).  An interview form from the public defender's file indicated that on January 22, 2003, plea counsel took notes regarding the substance of a meeting with the petitioner.  The note stated as follows: "Saw Def at jail.  Told him prosecution had offered 15 yr concurrent sentences on 3 armed robbery indictments in this county - no assurance as to what might happen to charges in other jurisdictions. Def said he would consider it and get back in touch" (Supp. App. 123).  The petitioner signed the plea agreement on February 21, 2003.  This agreement made no mention of the charges from other counties (Supp. App. 122).

With respect to the petitioner's claims of ineffective assistance of counsel, the PCR court found the petitioner had failed to meet his burden of proof (App. 111-12).  The petitioner had failed to prove both prongs of the *Strickland* test: that plea counsel failed to render reasonably effective assistance under prevailing professional norms or that the

4

petitioner was prejudiced by his attorney's performance. Thus, the PCR court concluded the petitioner had not met his burden of proving counsel failed to render reasonably effective assistance. Accordingly, the PCR court found that the petitioner knowingly, voluntarily, and intelligently entered his guilty plea (App. 112). Therefore, the PCR application was denied and dismissed with prejudice.

On September 24, 2008, the petitioner filed a timely appeal of the PCR denial. On appeal, the petitioner was represented by Jeremy Thompson. In the petition for writ of certiorari, the petitioner asserted his pleas of guilty were invalid because they were entered with the belief that his charges from other counties were going to be resolved in connection with his pleas. The State filed a return to the petition for writ of certiorari. In an order filed February 3, 2011, the South Carolina Supreme Court granted the petition. The petitioner subsequently filed a brief raising two arguments. First, he contended the lower court's decision that defense counsel was not ineffective because he gave no advice regarding the impact of the petitioner's plea to his other pending charges could not be upheld in light of *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). Second, he argued the lower court's decision to deny relief was unsupported by any probative evidence inasmuch as the petitioner's pleas of guilty were entered following defense counsel's erroneous advice that his outstanding charges in other counties would be resolved as a part of his plea. The State subsequently filed a brief in response, and the petitioner also filed a reply brief. In the reply brief, the petitioner argued 1) *Padilla* applied retroactively, and 2) the respondent's contention "the petitioner's exposure to more jail time and consecutive sentences did not arise from his Colleton County plea" was factually and legally inaccurate. On December 5, 2011, the South Carolina Supreme Court filed a memorandum opinion dismissing the writ of certiorari as improvidently granted. The remittitur was issued on December 21, 2011.

## UNDERLYING CASE FACTS

On August 2, 2002, the petitioner waited outside in a car while a co-defendant went into a Waffle House on Snyder's Highway in Colleton County, South Carolina (Indictment 2002-GS-15-0820). As the co-defendant entered the store with a Tech Nine

5

firearm, he screamed to everyone that he was going to kill them and demanded money from the cashier.  The co-defendant fled the store with approximately $1,500 (App. 8, 14, 51).

On August 6, 2002, the petitioner robbed a Waffle House on Bells Highway in Colleton County, South Carolina.  He wore a ski mask and brandished a Tech Nine semiautomatic handgun while demanding money from the cash register (Indictment 2002-GS-15-0824).  The manager pulled the cash register drawer out and put it on the counter. The petitioner ordered the manager to take the money out of the drawer.  The manager handed the petitioner $200.00, and the petitioner left the restaurant (App. 9, 14-15, 55).

On August 15, 2002, the petitioner along with one co-defendant went into a store in Colleton County, South Carolina armed with a Tech Nine semiautomatic firearm (Indictment 2002-GS-15-0819). The petitioner robbed the cashier of $41.00, and then fled the store.  The robbery was captured on surveillance video.  After law enforcement arrived and secured the perimeter of the store, they found the gun and the petitioner's shirt nearby (App. 7, 14, 42).  Afterward, when the petitioner was arrested, he confessed to the armed robbery on Bell's Highway and began cooperating with law enforcement (App. 15).

## **FEDERAL PETITION**

In his federal petition for writ of habeas corpus, which was filed *pro se*, the petitioner makes the following claim of error with regard to the Colleton County pleas:  "My lawyer was ineffective.  He misadvised me on all charges. Due to that I have consective [sic] sentences when in my case was wrong" (pet. 6).  On July 5, 2012, the respondent filed a return and a motion for summary judgment.  On September 21, 2012, the petitioner, now represented by counsel, filed a response in opposition to the motion for summary judgment. In that response, the petitioner argues: 1) defense counsel was ineffective pursuant to *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), and 2) defense counsel was ineffective for misadvising him regarding the collateral consequences of his plea.

6

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

7

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree

8

> is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690. With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

9

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

The petitioner first argues that his counsel was ineffective pursuant to *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010) (pet. resp. m.s.j. 6-12). In his brief before the Supreme Court of South Carolina on the PCR appeal, the petitioner raised this issue, and the South Carolina Supreme Court later dismissed the writ of certiorari as improvidently granted.

In *Padilla*, the United States Supreme Court held that an attorney's failure to advise a client about potential deportation consequences of a guilty plea constituted ineffective assistance of counsel. 130 S.Ct. at 1483. The petitioner argues that *Padilla* is retroactive and applies to cases pending on collateral review and that the holding in *Padilla* applies outside the scope of immigration consequences (pet. resp. m.s.j. 7-10). The petitioner contends that, under the reasoning of *Padilla,* his plea counsel's performance was deficient because he failed to advise him of the recidivist consequences of his plea in Colleton County with regard to his other pending charges in the other counties (*id.* 10).

In *Dennis v. United States*, 787 F.Supp.2d 425, 430 (D.S.C. 2011), The Honorable Joseph F. Anderson, Jr., United States District Judge, recently decided that the holding in *Padilla* did not retroactively apply to the defendant's case because, under the framework of *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court in *Padilla* created a new rule. *See also U.S. v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012) (concluding that

10

"insofar as *Padilla* recognized a new right, the right cannot be applied retroactively to cases on collateral review under the principles of *Teague*. And if *Padilla* did not recognize a new right, the essential condition of § 2255(f)(3) that a new right be recognized to trigger the one-year limitations period is not satisfied."). Accordingly, based upon the reasoning of *Dennis*, this court finds that *Padilla* does not retroactively apply to the petitioner's case.

The petitioner further argues that, even if *Padilla* is not retroactive, his plea counsel was ineffective for misadvising him regarding the collateral consequences of his plea by advising him that all of his charges in the four counties would be resolved by his plea in Colleton County (pet. resp. m.s.j. 12-13).[2] This claim was raised in the PCR action (App. 68-78, 86-87, 102-03), and the PCR court denied relief. The PCR court found that a review of the plea transcript revealed that no such representation was made to the petitioner (App. 110-11). The PCR court found that plea counsel conferred with the petitioner on numerous occasions (App. 111). Counsel's interview notes from a January 22, 2003, meeting with the petitioner indicated that the petitioner was aware of the negotiated 15-year concurrent sentences on the three armed robbery indictments in Colleton County, and that he had no assurance from the State as to what might happen with the charges in the other counties. Counsel further noted that the petitioner would consider the plea deal and get back in touch (Supp. App. 123). The petitioner signed the plea agreement, which did not mention the charges from the other counties, a month later on February 21, 2003 (Supp. App. 122). Further, the plea judge explained to the petitioner that he was pleading to a violent and most serious offense, requiring that he serve 85%, and that in the event that he pled to a subsequent most serious offense that he could be subject to life in prison without the possibility of parole. Additionally, the PCR court noted that the parameters of the

---

[2]This ground is stated in the petition as follows : "My lawyer was ineffective. He misadvised me on all charges. Due to that I have consective [sic] sentences when in my case was wrong" (pet. 6).

11

plea agreement were set out in the plea transcript revealing that the negotiation was for 15-year sentences on the Colleton County offenses with credit for time served (App. 111). Based upon the foregoing, the PCR court found the petitioner failed to meet his burden of proof as to either prong of an ineffective assistance of counsel claim under *Strickland* (App. 111-12).

The petitioner cannot show the PCR court made an unreasonable determination of the facts in denying relief upon this claim.  Furthermore, the petitioner cannot show that the PCR court unreasonably applied federal law.  The testimony and evidence presented at the PCR hearing and the plea hearing transcript show that plea counsel conferred with the petitioner and advised him appropriately, and the petitioner signed a plea agreement that made no mention of the charges from other counties.  The record shows the plea court specifically advised the petitioner about the charges to which he was pleading guilty, their possible sentences, and the fact he could receive a life without parole sentence on any future convictions after the guilty plea (App. 8-13).  The petitioner acknowledged that he understood the charges to which he was pleading guilty, their sentences, and the fact he could receive a life without parole sentence on any future convictions. He also acknowledged that he understood that the plea judge could ignore the negotiated sentence and sentence him to the maximum on all three Colleton County charges (App. 10-12).  Thus, any alleged improper advice regarding the resolution of the charges outside Colleton County as part of the Colleton County guilty plea was cured by the plea colloquy.  Accordingly, it was not unreasonable for the PCR court to find that the petitioner failed to prove his plea counsel's performance was deficient or that he was prejudiced as required by *Strickland*.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 17) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

December 18, 2012
Greenville, South Carolina